UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EMILIER CARRASQUILLO-FUENT, a/k/a EMILIER
CARRASQUILLO-FUENTES,

|  |  |  |
|---|---|---|
| | Petitioner, | |
| v. | | 9:18-CV-0415 |
| | | (GTS) |
| JOSEPH NOETH, | | |
| | Respondent. | |

---

| APPEARANCES: | OF COUNSEL: |
|---|---|

EMILIER CARRASQUILLO-FUENT
13-B-1982
Petitioner, pro se
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

| HON. LETITIA A. JAMES | JAMES FOSTER GIBBONS, ESQ. |
|---|---|
| New York State Attorney General | Assistant Attorney General |
| Attorney for Respondent | |
| The Capitol | |
| Albany, New York 12224 | |

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

Petitioner Emilier Carrasquillo-Fuent ("petitioner") filed his original petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 on April 5, 2018.  Dkt. No. 1.  Because the

petition contained vague and indiscernible claims, the Court provided petitioner an

opportunity to file an amended petition.  Dkt. No. 6.  Petitioner submitted his amended

petition to the Court on or about June 14, 2018.  Dkt. No. 7, Amended Petition ("Am. Pet.").

On June 21, 2018, the Court directed respondent to answer the amended petition. Dkt. No. 8. Respondent opposes the amended habeas petition. Dkt. No. 15, Response; Dkt. No. 15-1, Respondent's Memorandum of Law ("Resp. Memo."); Dkt. No. 16 State Court Records Part I ("SCR"); Dkt. No. 17 State Court Records Part II ("Trial Transcript"). On January 18, 2019, petitioner filed his reply. Dkt. No. 21 ("Traverse").

For the reasons that follow, petitioner's amended habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

On August 21, 2010, two people were shot in the parking lot of a gas station located on South Geddes Street in Syracuse, New York. Trial Transcript at 60-61, 449-50, 513, 520-22.[1] One of those victims, Luis Quinones, died as a result of the gunshot wounds. *Id.* at 449-50.

On September 7, 2010, petitioner and a co-defendant were indicted in Onondaga County, New York, for murder in the second degree, attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree arising out of the shooting that occurred on August 21, 2010. SCR at 68-69; Trial Transcript at 50-51. Petitioner and his co-defendant were jointly tried by a jury in Onondaga County Court between May 13-28, 2013. *See* Trial Transcript. As relevant to petitioner's pending habeas petition, at trial, the prosecution introduced a recording of a 911 telephone call made by Lisa Ball, who witnessed the shooting. *Id.* at 470.[2] The prosecution also called Dr. Stoppacher,

---

[1] The page numbers cited to in this Decision and Order reflect those assigned by the Court's electronic filing system.

[2] During the trial, the recording was admitted into evidence as Exhibit 15. Respondent submitted a compact disc containing a copy of the recording to the Court as part of the state court records. *See* Dkt. No. 19.

the Onondaga County Chief Medical Examiner, who testified concerning, among other things, the origin of the bullets found in Luis Quinones' body following his death. *Id.* at 1478-1486. On May 28, 2013, at the conclusion of the trial, the jury found petitioner guilty of second-degree murder, first-degree assault, and second-degree criminal possession of a weapon. *Id.* at 1826. On June 24, 2013, petitioner was sentenced to an aggregate term of 50 years to life imprisonment. SCR at 437-38.

Following his sentence, petitioner appealed the jury's verdict to the Appellate Division, Fourth Department. In his counseled brief, petitioner claimed, among other things, that the admission of the 911 telephone call recording violated his Sixth Amendment rights. SCR at 3-54. Petitioner also filed a pro se supplemental brief claiming, among other things, that (1) the prosecution delayed pretrial discovery in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) the trial court erred by failing to provide a read-back of certain trial testimony at the request of the jury. *Id.* at 467-508. On September 30, 2016, the Appellate Division rejected all of petitioner's foregoing claims. SCR at 526-29; *People v. Carrasquillo-Fuentes*, 142 A.D.3d 1335 (4th Dep't 2016). On January 6, 2017, the New York State Court of Appeals denied petitioner's leave to appeal. SCR at 537.

## III.    AMENDED PETITION

Petitioner contends that he is entitled to federal habeas relief for the following six reasons: (1) the prosecution withheld the identity of the 911 caller ("Ground One"); (2) the prosecution withheld evidence showing that one of the bullets found in the Luis Quinones' back did not match the other bullets that were discovered ("Ground Two"); (3) the prosecution withheld video footage of the shooting ("Ground Three"); (4) the New York State

Court of Appeals denied him the opportunity to exhaust his state court remedies ("Ground Four"); (5) petitioner was convicted using a coerced confession from Michael Fuentes-Diaz ("Fuentes-Diaz"), a witness that testified for the prosecution at trial ("Ground Five"); and (6) the trial court erred in failing to read back a portion of the trial testimony as requested by the jury ("Ground Six").  Am. Pet. at 7-11.

Respondent opposes the petition arguing as follows: (1) the state courts properly rejected petitioner's claim concerning the admissibility of the 911 recording; (2) the state courts properly rejected petitioner's claim that the prosecution withheld exculpatory evidence; (3) petitioner's claim that the prosecution withheld an exculpatory video recording of the crime is procedurally barred; (4) petitioner's claim that the New York State Court of Appeals interfered with his ability to exhaust his state court remedies is not cognizable; (5) petitioner's claim that Fuentes-Diaz's confession was coerced is procedurally defaulted and meritless; and (6) petitioner's claim that the trial court erred in failing to read back a witness' testimony for the jury is procedurally barred and meritless.  Resp. Memo. at 12-25.

Petitioner filed a reply, contending as follows: (1) the recording of the 911 call was testimonial and its admission violated his Sixth Amendment rights; (2) the prosecution did not disclose the existence of the fourth .380 bullet or Dr. Stoppacher's new theory until days before trial; (3) petitioner presented the issue of whether the prosecution had an exculpatory video recording of the crime to the trial court; (4) petitioner has exhausted state court remedies to the best of his ability; (5) Fuente-Diaz's confession was coerced and his testimony at trial was not credible; and (6) the trial court's failure to read back to the jury part of a witness' testimony deprived petitioner of a fair trial.  *See* Traverse.

4

IV.    **DISCUSSION**

A.    **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotation marks omitted).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on Section 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'"  *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (quoting *Renico v. Lett*, 559 U.S. 766, 779 (2010)).  A state court's findings are not unreasonable under Section 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence."  *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).  "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings."  *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]"  *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

### B.    Ground One

Petitioner claims, as he did on direct appeal to the Appellate Division, that the trial court's admission of the recording of the 911 call from the night of the crime violated his Sixth Amendment right to confront his accuser.  Am. Pet. at 5; Traverse at 5-8.  Respondent contends that the state court's determination was reasonable and is entitled to deference.

Resp. Memo at 18-20.

The Appellate Division concluded that the 911 call was nontestimonial and therefore its admission did not violate the Sixth Amendment. *Carrasquillo-Fuentes*, 142 A.D.3d at 1337-38. The Sixth Amendment's Confrontation Clause, which provides that "the accused shall enjoy the right . . . to be confronted with the witnesses against him," U.S. Const. amend. VI, bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Wash.*, 541 U.S. 36, 53-54 (2004); *accord, Davis v. Wash.*, 547 U.S. 813, 821 (2006).

At issue in this habeas action, and what was at issue before the state courts, is whether the 911 call recording played at trial was "testimonial" in nature and therefore subject to the Confrontation Clause. The Supreme Court has explained that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822 (holding that a 911 caller is not acting as a witness or testifying, but helping to describe a current situation requiring law enforcement aid, thus such statements are not subject to the Confrontation Clause).

Having carefully reviewed the recording of the 911 call, and the state court's rulings, the Court concludes that the state courts reasonably concluded that the call was not testimonial and outside the scope of the Confrontation Clause. The caller, Lisa Ball, was frantically speaking about the crime as it was happening, including describing the direction the suspects were headed. Viewed objectively, the purpose of the interrogation was "to enable police assistance to meet an ongoing emergency." *Davis*, 547 U.S. at 822. Because

7

the state court's decisions were a reasonable application of well established Supreme Court precedent, petitioner's Sixth Amendment claim is denied and dismissed.

**C.    Ground Two**

Petitioner claims, as he did in his pro se supplemental brief on direct appeal to the Appellate Division, that the prosecution withheld disclosure of the fourth bullet recovered from the victim (described as a .380 bullet) from the defense until two days before trial and that the delay denied him a fair trial.  Am. Pet. at 5; Traverse at 1-4.  Respondent contends that the state court properly decided that the existence of .380 bullet was not suppressed by the prosecution, and that it was reasonable to deny a request for an adjournment of the trial after the prosecution disclosed an alternative theory about the .380 bullet two days before trial.  Resp. Memo. at 12-17.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  *Brady* is not violated "unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Strickler*, 527 U.S. at 281.  Moreover, "*Brady* cannot be violated if the defendant[] had actual knowledge of the relevant information or if the documents are part of public records and defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation."  *United*

8

*States v. Zagari*, 111 F.3d 307, 320 (2d Cir.1997) (internal quotation marks omitted).

Although petitioner specifically contends that the prosecution "withheld a .380 bullet," Am. Pet. at 5, and "failed to disclose the .380 caliber bullet recovered from the victim[']s shoulder," Traverse at 2, petitioner focuses his *Brady* claim on the allegedly late disclosure by the prosecution that Dr. Stoppacher had developed an alternative theory concerning the origin of the .380 bullet.  The state court record reflects that the prosecutor met with Dr. Stoppacher on May 10, 2013, three days before trial, at which time Dr. Stoppacher told the prosecutor that, although the initial medical examiner had concluded that the .380 bullet found in the victim's shoulder had entered his body through a fresh wound track nearby, based on his independent review of the evidence, Dr. Stoppacher believed it was also possible that the .380 bullet was, instead, an artifact of a prior unrelated shooting.  Trial Transcript at 29-30.  The next day, the prosecution informed defense counsel and the trial court that Dr. Stoppacher had formed a modified opinion concerning the origin of the .380 bullet.  *Id.* at 21.  Accordingly, because the alternative theory was disclosed immediately after the prosecutor was made aware of the change, the facts demonstrate that the prosecution did not suppress any evidence, as required for a *Brady* violation.

To the extent that petitioner claims the prosecution did not disclose Dr. Stoppacher's new theory soon enough, such arguments are similarly unavailing.  There is no requirement that evidence be disclosed well in advance of trial.  Due process requires only that a defendant receive potential *Brady* material before it is too late for him to make beneficial use of it at trial.  *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (citing *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001)).  In this case, the Appellate Division reasonably applied Supreme Court precedent to conclude that, because petitioner was notified of Dr.

Stoppacher's alternative theory several days before Dr. Stoppacher testified at trial, petitioner was provided a meaningful opportunity to use Dr. Stoppacher's alternative theory to cross-examine him.  Accordingly, petitioner's *Brady* claim is denied and dismissed.

### D.    Grounds Three and Five

Respondent contends that petitioner's third and fifth grounds for habeas relief (i.e., that the prosecution withheld an exculpatory video recording of the crime and that Fuentes-Diaz's confession (upon which the prosecution relied at trial to convict petitioner) was coerced) are procedurally barred, precluding habeas review by the Court.  Resp. Memo. at 16-17, 22-24.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement.").  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Daye*, 696 F.2d at 192.  This exhaustion requirement is

satisfied if the federal claim has been "'fairly present[ed]'" to the state court.  *Dorsey v. Kelly*,

112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  A

claim has been "fairly presented" if the state court was apprised of "both the factual and the

legal premises of the claim [the petitioner] asserts in federal court."  *Daye*, 696 F.2d at 191.

Thus, "the nature or presentation of the claim must have been likely to alert the court to the

claim's federal nature." *Id.* at 192.

Petitioner did not present his claims concerning an allegedly exculpatory video and a

coerced confession to the state court in either his counseled or pro se briefs.  *See* SCR at 3-

54, 467-508.  Accordingly, the claims are unexhuasted.

After a court determines that a claim is unexhausted, it next considers whether the

claim is procedurally defaulted.  In the event an exhausted claim is "barred by state law and.

. . its presentation in the state forum would [therefore] be futile[,] . . . [the federal habeas

court] theoretically has the power to deem the claim exhausted." *Aparicio*, 269 F.3d at 90.

As the Second Circuit candidly noted, however,

> [t]his apparent salve. . . proves to be cold comfort to most
> petitioners because . . . when 'the petitioner failed to exhaust state
> remedies and the court to which the petitioner would be required
> to present his claims in order to meet the exhaustion requirement
> would now find the claims procedurally barred, federal habeas
> courts also must deem the claims procedurally defaulted.'

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Here, petitioner's claim is procedurally defaulted because petitioner can no longer

raise it in any state forum.  "The time afforded by New York law for filing a leave application

has expired." *Cano v. Walsh*, 170 F. App'x 749, 750 (2d Cir. 2006) (citing New York Criminal

Procedure Law §§ 460.10(5)(a), 460.30(1) (fixing the time at 30 days from service of the

11

order plus a one-year grace period)).  Further, petitioner already utilized the direct appeal to which he is entitled and, because the claims set forth in Grounds Three and Five were reviewable from the record, he cannot raise them in a motion to vacate the judgment.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (explaining that, where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, "petitioner no longer has 'remedies available' in the . . . state courts . . . and . . . he had met the statutory exhaustion requirements").

Once a claim has been deemed procedurally defaulted, it is subject to dismissal unless the petitioner can demonstrate "cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  *Aparacio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748-50); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000).

Here, petitioner has failed to establish cause for his default and prejudice attributable thereto, nor has petitioner argued that failure to consider his claims will result in a miscarriage of justice.  Accordingly, petitioner's claims set forth in Grounds Three and Five are denied and dismissed as procedurally defaulted.

Even assuming, however, that petitioner's claims regarding the video footage of the crime and the allegedly coerced confession by a trial witness are not procedurally barred, they are also dismissed because they are meritless.  With respect to petitioner's claim that the prosecution withheld a video recording of the crime, as discussed above, to establish a *Brady* violation, the petitioner must prove that "[t]he evidence at issue must be favorable to [him], either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have

12

ensued." *Strickler*, 527 U.S. at 281-82.  Petitioner has demonstrated neither that the video recording exists nor that such recording (assuming it exists) proves that he is innocent.

Finally, petitioner's claim that his constitutional rights were violated when the prosecution used the allegedly coerced confession of Fuentes-Diaz at trial also fails because petitioner may not invoke the Fifth Amendment rights of a third-party.  *See, e.g., United States v. Nobles*, 422 U.S. 225, 234 (1975) ("We thus conclude that the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial."); *Couch v. United States*, 409 U.S. 322, 389 (1973) ("It is important to reiterate that the Fifth Amendment privilege is a personal privilege: it adheres basically to the person, not to information that may incriminate him."); *United States v. Robinson-Munoz*, 961 F.2d 300, 303 (1st Cir. 1992) ("[A] co-defendant cannot object to the admission of a confessing defendant's inculpatory statement on the ground that the confessing defendant's Fifth Amendment rights were violated.").

Accordingly, for the foregoing reasons, petitioner's claims set forth in the Third and Fifth Grounds are denied and dismissed.

### E.    Ground Four

Petitioner next contends that the New York State "Court of Appeals denied [him] the opportunity to exhaust the next remedy in seeking review" by denying him leave to appeal the Appellate Division's decision.  Am. Pet. at 7.  Respondent correctly argues that petitioner's claim that the New York State Court of Appeals denied him the ability to exhaust his state-court remedies by denying him leave to appeal provides no basis for habeas relief. Resp. Memo at 22-23.

A habeas petition "shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). What remedies are available "depends in the first instance on the structure of the state judicial system." *Daye*, 696 F.2d at 191 n.3. Exhaustion is complete when petitioners present their habeas claims to the highest state court from which a decision can be rendered. *Daye*, 696 F.2d at 191 n.3.

In this case, petitioner filed an application for leave to appeal to the New York State Court of Appeals, which was denied. SCR at 530-34, 537. The act of petitioner presenting his claims, in federal terms, to the highest court in New York State was sufficient to satisfy the exhaustion prerequisite regardless of the application's outcome. Accordingly, petitioner has successfully exhausted the state court remedies with respect to the claims included in Grounds One, Two, and Six of the amended habeas petition (as described above in Part III of this Decision and Order), all of which he raised on direct appeal to the Appellate Division and in his application for leave to appeal to the New York State Court of Appeals. SCR at 530-34. As for petitioner's other claims set forth in Grounds Three and Five of his amended habeas petition, he did not include those claims on direct appeal to the Appellate Division or in his application for leave to appeal to the New York State Court of Appeals, rendering those claims unexhausted for purposes of habeas review. The New York State Court of Appeals' denial of petitioner's application for leave to appeal has no affect on this Court's habeas exhaustion analysis of those unexhausted claims.

Accordingly, petitioner is not entitled to habeas relief on this claim and Ground Four is denied and dismissed.

**F.     Ground Six**

Petitioner's last claim, which he also argued in his pro se supplemental brief on direct appeal to the Appellate Division, is based on his contention that his constitutional right to a fair trial was violated when the trial court failed to provide the jury with a requested read-back of a trial witness' testimony.  Am. Pet. at 10.  Respondent argues that this claim is precluded because it was denied by the state court on an adequate and independent state law ground. Resp. Memo. at 24-25.

As a matter of both comity and in keeping with the principles of federalism, a federal court ordinarily will not review a federal claim presented in a habeas petition if it has been rejected by the state courts on a ground that is both independent of the federal question presented and adequate to support the resulting judgment.  *Cone v. Bell*, 556 U.S. 449, 465 (2009); *Coleman*, 501 U.S. at 729; *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011); *Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *Brown v. Greiner*, 409 F.3d 523, 532 (2d Cir. 2005).  A court must examine both whether the state court's ruling is wholly independent of any federal question presented, and whether the claim has been rejected based on an adequate ground – that is, whether the rule applied is firmly established and regularly followed.  *Downs*, 657 F.3d at 102.  The federal habeas court's function is "to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct."  *Id.* (citing *Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011)).

Here, the Appellate Division rejected petitioner's claim on appeal that the trial court erred in failing to provide a read-back of a witness' testimony (as requested by the jury)

15

because petitioner failed to preserve the argument by failing "to object to the trial court's response to the request." *Carrasquillo-Fuentes*, 142 A.D.3d at 1338.  In this Circuit, the contemporaneous objection rule has regularly been recognized as an independent and adequate state law ground sufficient to preclude habeas review. *See, e.g., Downs*, 657 F.3d at 102; *Whitley*, 642 F.3d at 286.  Accordingly, petitioner's claim that his right to a fair trial was violated when the trial court failed to provide the jury with the read-back of a witness' testimony is denied and dismissed.

## V.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended petition (Dkt. No. 7) is **DENIED AND DISMISSED IN ITS ENTIRETY**; and it is further

**ORDERED** that a certificate of appealability shall not be issued with respect to any of the claims set forth in the amended petition because petitioner failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. §  2253(c)(2); and it is further

**ORDERED** that any further request for a certificate of appealability must be addressed to the Second Circuit Court of Appeals in accordance with Rule 22(b) of the Federal Rules of Appellate Procedure; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: July 8, 2020
          Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

16